UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DONALD BLASKIEWICZ, M.D.,<br><br>Petitioner,<br><br>v.<br><br>WEST VALLEY MEDICAL CENTER, INC. d/b/a WEST VALLEY MEDICAL CENTER,<br><br>Respondent. | Case No. 1:24-cv-00397-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

Before the Court is Respondent West Valley Medical Center, Inc.'s (West Valley) Motion for Attorney Fees (Dkt. 23). The Court finds oral argument would not significantly aid its decision-making process and decides the motion on the record. Dist. Idaho Loc. Civ. R. 7.1(e)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). For the reasons discussed below, the Court grants the motion and awards West Valley attorney fees in the amount of $23,449.50.

## I. BACKGROUND

The Court set forth the factual background in detail in its prior Memorandum Decision and Order (Dkt. 21 at 2–3). The following background is relevant to the instant motion:

West Valley and Blaskiewicz previously arbitrated a dispute arising from a physician-recruiting agreement and related promissory note (Dkt. 1-1 at 33–34). The arbitrator awarded West Valley $760,930.72 in damages and subsequently awarded West Valley $101,866.23 in attorney fees and costs (Dkt. 1-11; Dkt. 1-12). West Valley then obtained an order confirming the arbitration award in state court, and the state court later entered judgment in West Valley's favor (Dkt. 4-3;

Dkt. 4-4). Meanwhile, Blaskiewicz filed this action seeking to vacate or modify the arbitration award (Dkt. 1).

West Valley subsequently moved under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Blaskiewicz's petition (Dkt. 11). The Court granted West Valley's motion on the grounds that Blaskiewicz's petition was not timely filed (Dkt. 21 at 1) and entered judgment in West Valley's favor (Dkt. 22). West Valley then moved for attorney fees (Dkt. 23).

## II. LEGAL STANDARD

A federal court sitting in diversity applies the substantive law of the state in which it sits in determining whether a party is entitled to a fee award, while federal law provides the procedure for requesting an award. *Carnes v. Zamani*, 488 F.3d 1057, 1059 (9th Cir. 2007). Under Idaho law, the prevailing party in a civil action involving recovery on a commercial transaction "shall be allowed a reasonable attorney's fee to be set by the court." Idaho Code § 12-120(3). Federal courts also have inherent power to assess attorney fees against a party who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991).

Before awarding fees, a court must determine whether the fees are reasonable, which involves a two-step process. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992). First, the Court calculates the "lodestar figure," which is "the number of hours reasonably expended multiplied by a reasonable hourly rate." *Id.*; *Vogel v. Harbor Plaza Center, L.L.C.*, 893 F.3d 1152, 1160 (9th Cir. 2018). This analysis involves an examination of the "experience, skill and reputation of the attorney requesting fees" in addition to the prevailing market rate. *United States v. Fid. & Deposit Co. of Md.*, No. 19-cv-00293-RCT, 2022 WL 17128626, at *1 (D. Idaho Nov. 22, 2022) (quoting *Trevino v. Gates*, 99 F.3d 911, 924 (9th Cir. 1996)); *see Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The court also considers the reasonableness of the hours expended, accounting

for whether the hours were "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. The court then calculates the reasonable attorney fees by multiplying the hourly rate and expended hours. *Id.* at 433.

Second, the Court "assesses whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of the *Kerr* factors that are not already subsumed in the initial lodestar calculation." *Morales v. City of San Rafael*, 96 F.3d 359, 363–64 (9th Cir. 1996), *opinion amended on denial of reh'g*, 108 F.3d 981 (9th Cir. 1997). The *Kerr* factors include "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Morales*, 96 F.3d at 363 n.8 (citing *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)). Notwithstanding these factors, "[t]here is a strong presumption that the lodestar figure represents a reasonable fee." *Id.* "The burden of proving that such an adjustment is necessary" is on the party seeking the adjustment. *Blum v. Stenson*, 465 U.S. 886, 898 (1984).

## III. ANALYSIS

In its motion for attorney fees, West Valley contends it is entitled to attorney fees under Idaho Code § 12-120(3), or in the alternative, under the Court's inherent power to assess attorney fees against a party who acted in bad faith (Dkt. 23-1 at 3). In response, Blaskiewicz contends West Valley is not entitled to attorney fees because (1) neither the parties' contract nor § 12-120(3) requires an award of attorney fees in this proceeding; (2) his filing was neither frivolous nor made in bad faith so as to justify an award of fees under Idaho's prevailing party law; and (3) the

requested amount of $23,449.50 is unreasonable (Dkt. 26 at 1–2). Blaskiewicz does not, however, challenge whether West Valley is the prevailing party nor the reasonableness of the hourly fee set by West Valley's counsel, Mr. Howell and Mr. Zimmerman (*see id.* at 9).

Because the Court awards fees under § 12-120(3), it need not consider whether to award fees pursuant to its inherent power.

**A. Fee Award Under Idaho Code § 12-120(3)**

This action was brought before the Court pursuant to its diversity jurisdiction (Dkt. 1 at 5). "State law establishes the required showing for attorney's fees in an action in diversity." *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 827 (9th Cir. 2009). Section 12-120(3) provides, in relevant part, "In any civil action to recover on . . . [a] note . . . relating to . . . any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs." The term "commercial transaction" is defined to mean all transactions except transactions for personal or household purposes. *Id.*

Here, West Valley maintains that it is entitled to attorney fees pursuant to § 12-120(3) because it was the prevailing party in litigation involving a commercial transaction (Dkt. 23-1 at 2). Blaskiewicz, however, argues the Uniform Arbitration Act (UAA)—not Idaho Code § 12-120(3)—controls, citing *Grease Spot, Inc. v. Harnes*, 226 P.3d 524, 529 (Idaho 2010), in support.[1] In *Grease Spot*, the Idaho Supreme Court considered whether the prevailing party in an action to confirm an arbitration award was entitled to mandatory attorney fees under § 12-120(3). *Grease Spot*, 226 P.3d at 529. The court noted that § 12-120(3) entitles the prevailing party to reasonable

---

[1] The parties previously disagreed about whether the Federal Arbitration Act (FAA) or UAA applies to this action (Dkt. 21 at 4 n.1). The Court did not resolve that issue because it was unnecessary to the disposition of the petition (*id.*). Because neither party argues the FAA supplies a separate basis for resolving the fee issue, the Court does not address its applicability here.

attorney fees for the litigation components of arbitrated disputes that involve a "commercial transaction," while § 7-914 of the UAA permitted attorney fees in the court's discretion "[u]pon the granting of an order confirming, modifying or correcting an [arbitration] award." *Grease Spot*, 226 P.3d at 529 n.5. The court held that the specific UAA provision governed over the general fee-shifting statute and that the decision to award post-arbitration fees was left to the district court's discretion. *Id.* at 529–30. But § 7-914 is not applicable here because the Court did not enter an order confirming, modifying, or correcting the arbitration award. Rather, the Court dismissed Blaskiewicz's petition to vacate as untimely without reaching the merits. Accordingly, § 7-914 does not govern the attorney fees in this proceeding and, unlike in *Grease Spot*, there is no specific UAA provision governing attorney fees incurred in this proceeding. Accordingly, *Grease Spot* does not preclude an award under § 12-120(3), so long as this action otherwise falls within its terms.

As mentioned above, § 12-120(3) permits recovery to (1) the prevailing party in a civil action (2) involving the recovery on a contract relating to a commercial transaction that "comprises the gravamen of the lawsuit." *Brower v. E.I. DuPont De Nemours & Co.*, 792 P.2d 345, 349 (Idaho 1990). It is undisputed that West Valley was the prevailing party. The only issue is whether a commercial transaction was the gravamen of Blaskiewicz's petition to vacate.

A commercial transaction comprises the gravamen of the lawsuit if the "commercial transaction is integral to the claim, and constitutes the basis upon which the party is attempting to recover." *Id.* at 349. The mere allegation of "the existence of a contractual relationship of the type embraced by [§ 12-120(3)]" is sufficient to "trigger[] the application of the statute." *Continental Cas. Co. v. Brady*, 907 P.2d 807, 812 (Idaho 1995) (quoting *Farmers Nat'l Bank v. Shirey*, 878 P.2d 762, 772 (Idaho 1994)). A transaction is integral to a claim when the claim depends upon the

existence of that transaction, and the transaction provides the factual basis for the dispute. *Great Plains Equip. Co. v. Nw. Pipeline Corp.*, 36 P.3d 218, 223 (Idaho 2001).

Whether a case involves a commercial transaction under § 12-120(3) depends on the gravamen of the lawsuit—not the particular form of relief sought. *Idaho Transp. Dep't v. Ascorp, Inc.*, 357 P.3d 863, 866 (Idaho 2015). In *Ascorp*, the Idaho Supreme Court considered whether § 12-120(3) applied to a declaratory and injunctive action concerning the enforceability of a provision in a highway construction contract. *Ascorp*, 357 P.3d at 866. The court explained that § 12-120(3) applies when "the commercial transaction comprises the gravamen of the lawsuit" and that "a gravamen is the material or significant part of the grievance or complaint." *Ascorp*, 357 P.3d at 866 (quoting *Brower*, 792 P.2d at 349); *see also Sims v. Jacobson*, 342 P.3d 907, 912 (Idaho 2015). The court noted that the mere fact that an action is styled as a declaratory judgment action does not preclude application of the statute where the gravamen of the underlying dispute is a commercial transaction. *Ascorp*, 357 P.3d at 866 (citing *Freiburger v. J-U-B Eng'rs, Inc.*, 111 P.3d 100, 109 (Idaho 2005)). Thus, even though the plaintiff sought declaratory and injunctive relief rather than recovery of a debt, because the highway construction contract was plainly a commercial transaction, the court held that the action fell within § 12-120(3). *Ascorp*, 357 P.3d at 866.

Here, Blaskiewicz contends that his petition involves the conduct of the arbitrator, not the merits arbitration regarding recovery on the promissory note (Dkt. 26 at 3). But *Ascorp* instructs that the Court must look to the substance of the dispute, rather than the particular form of the action or relief sought. Although Blaskiewicz's petition challenged the arbitration award rather than directly seeking recovery on the promissory note, the arbitration itself arose from West Valley's claim for recovery under the promissory note (Dkt. 1 at 14). The promissory note, in turn, was executed in connection with the physician-recruiting agreement between Blaskiewicz and West

Valley (Dkt. 1-1 at 33–34). The nature of the relief sought does not change the underlying transaction giving rise to the dispute. Thus, the transaction underlying the arbitration and the resulting petition was the physician-recruiting agreement and related promissory note, not the arbitrator's conduct in isolation.

Further, the physician-recruiting agreement and promissory note were commercial transactions because they arose from a professional and business relationship between Blaskiewicz and West Valley and were not transactions for personal or household purposes. Indeed, those commercial transactions are integral to Blaskiewicz's petition because, without them, there would be no arbitration award to vacate. This conclusion is bolstered by the fact that the arbitrator previously awarded West Valley attorney fees under § 12-120(3) in connection with the underlying dispute (Dkt. 1-11 at 15; Dkt. 1-12 at 1).

Thus, the Court finds that the gravamen of Blaskiewicz's petition concerned a commercial transaction and § 12-120(3) applies. Because West Valley is entitled to attorney fees under § 12-120(3), the Court does not consider whether fees pursuant to the Court's inherent power provides an alternative basis for an award.

**B. Amount of the Fee Award**

Having found West Valley is entitled to attorney fees under § 12-120(3), the Court must now calculate the lodestar amount—the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate—to determine the appropriate fee award.

**1. Reasonable Rates**

"Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)). Within the relevant community, the court considers the "rate prevailing in the community for similar work performed

by attorneys of comparable skill, experience, and reputation." *Barjon*, 132 F.3d at 502 (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986)).

Here, Blaskiewicz does not dispute the reasonableness of each attorney's hourly rate (Dkt. 26 at 9). The Court also notes that Mr. Howell's hourly rate of $315 and Mr. Zimmerman's hourly rate of $225 are within a range of rates charged in other cases the Court has recently approved. *See, e.g.*, *Fitzmorris v. AG Mfg. & Tech., Inc.*, No. 24-CV-00196-AKB, 2025 WL 1556354, at *2 (D. Idaho June 2, 2025) (finding hourly rate of $300 for attorneys was reasonable based on prevailing market rate in Idaho); *Dickinson Frozen Foods, Inc. v. FPS Food Process Sols. Corp.*, 1:17-cv-00519-DCN, 2021 WL 2444157, at *13-15 (D. Idaho 2021) (approving a wide range of fees from $280–$600 for attorneys based on experience and the relevant markets). The Court therefore finds West Valley's counsel's requested hourly rates are reasonable.

**2. Reasonable Hours Expended**

A court may exclude from the fee calculation hours that were not "reasonably expended," such as hours which are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. The fee applicant bears the burden of proof and "can meet his burden—although just barely—by simply listing his hours and identifying the general subject matter of his time expenditures." *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (citation modified). "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

Here, West Valley provided billing records together with a description for each time expenditure (Dkt. 23-3). Blaskiewicz challenges several of the entries. First, Blaskiewicz contends the 7.5 hours West Valley spent opposing an extension of time that was granted in Blaskiewicz's favor should be rejected (Dkt. 26 at 7–8). Although West Valley acknowledges that the Court

granted Blaskiewicz's motion before it could respond, it contends a reward of attorney fees is still appropriate because the content of its response was included in its reply in support of its motion to dismiss (Dkt. 29 at 9).

The Court declines to deduct these hours. Mr. Howell asserts that he began addressing the extension request several days before Blaskiewicz filed his motion (Dkt. 29-1 ¶¶ 10–11), and the billing records reflect work performed in evaluating the request, communicating with opposing counsel and its client, reviewing the motion and supporting materials, and preparing a response (Dkt. 23-3 at 3). West Valley explains that it opposed the extension in part because Blaskiewicz's motion contained factual assertions concerning service of the state-court filings that West Valley believed were inaccurate and that implicated the merits of its motion to dismiss (Dkt. 29 at 9; Dkt. 29-1 ¶ 13). Although the Court ultimately granted the extension, Mr. Howell represents that he ceased working on its response upon receiving the Court's docket entry order granting the motion (Dkt. 29-1 ¶ 14; *see* Dkt. 17). West Valley also represents that it incorporated much of the work performed in preparing the response into its subsequent reply in support of its motion to dismiss (Dkt. 29-1 ¶ 15). Under these circumstances, the Court finds that Blaskiewicz has not established that the challenged hours were excessive, redundant, or otherwise unnecessary. Accordingly, the fact that the Court granted the extension before West Valley filed its response does not, standing alone, warrant a reduction of the fees claimed for this work.

Next, Blaskiewicz maintains that West Valley's billing records contain duplicative time between Mr. Howell and Mr. Zimmerman (Dkt. 26 at 8). He identifies several entries wherein the description of the work Mr. Howell and Mr. Zimmerman performed appears to be related or overlapping with one another. West Valley explains that Mr. Howell was the primary attorney since spring of 2020 and that Mr. Zimmerman assisted Mr. Howell throughout the litigation

(Dkt. 29 at 10). It contends, however, that the time spent was not unnecessarily duplicative, but rather certain tasks were divided up between the two attorneys (*id.*).

The fact that two attorneys performed work concerning the same general subject matter does not, by itself, establish that the time was duplicative. For example, on September 5, 2024, Mr. Howell billed 1.8 hours for reviewing federal filings, researching and analyzing arguments, corresponding with clients, and analyzing the impact of the state-court case on the federal filing (Dkt. 26-1 at 8). Mr. Zimmerman billed 0.3 hours that day for analyzing documents to assess available arguments concerning the federal allegations (*id.*). Although the entries concern related subject matter, their descriptions do not establish that Mr. Zimmerman duplicated work performed by Mr. Howell. Nor does Blaskiewicz explain why the identified entries reflect duplicative work, identify any particular hours that should be deducted, or provide a basis for determining how much of the challenged time was allegedly duplicative. The Court therefore finds that Blaskiewicz has not met his burden of demonstrating that the challenged hours were excessive, redundant, or otherwise unnecessary.

Based on 68.3 hours billed at $315 per hour and 8.6 hours billed at $225 per hour, the Court calculates the lodestar figure as $23,449.50.

**3. *Kerr* Adjustments**

As a final step in assessing the reasonableness of a fee award, the Court must measure the lodestar figure against the *Kerr* factors—originally laid out in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)—to determine whether an adjustment to the lodestar figure is necessary. *Mares-Orozco v. Guzman*, No. 23-cv-00026-DCN, 2023 WL 5179674, at *5 (D. Idaho Aug. 10, 2023). The Court need not consider every *Kerr* factor, but only those relevant to the Court's decision and necessary to determine the reasonableness of the fee award. *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1158 (9th Cir. 2002). "Only in rare instances should the lodestar

figure be adjusted on the basis of other considerations." *Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir. 1994).

Blaskiewicz first argues that the lodestar should be reduced because West Valley's billing records contain block-billed entries (Dkt. 26 at 7). He identifies several entries that combine multiple tasks into a single time entry and contends that the Court cannot determine whether the time spent on each task was reasonable (*id.*). "Block billing is the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007) (citation modified) (quoting *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1554 n.15 (10th Cir. 1996)). The Ninth Circuit has recognized that a district court has the authority to reduce hours that are billed in block format "because block billing makes it more difficult to determine how much time was spent on particular activities." *Id.* at 948. That said, where only some of the requested hours are block billed, a district court should not simply impose a blanket, across-the-board reduction. *Id.* Rather, the district court should impose a reduction that "fairly balances those hours that were actually billed in block format." *Id.* (citation modified) (quoting *Sorenson v. Mink*, 239 F.3d 1140, 1146 (9th Cir. 2001)).

West Valley acknowledges that several of its entries were block billed, but argues that its billing records provide sufficient detail to evaluate the work performed and that the entries are not so vague as to prevent the Court from assessing their reasonableness (Dkt. 29 at 7–8). The Court agrees. Although West Valley's entries contain block billing; the Court finds that the entries are sufficiently detailed to allow the Court to assess the reasonableness of each entry. For example, Mr. Howell's October 25 entry for 1.6 hours identifies the specific legal issues researched, the authority reviewed, and the purpose for which the research was performed (Dkt. 26-1 at 4). Similarly, Mr. Howell's November 18 entry for 1.8 hours identifies the subjects of his legal

research, the documents reviewed, the analysis conducted, and with whom he corresponded (*id.* at 5). Although these entries encompass multiple tasks, they are not so vague that the Court cannot evaluate the work performed or the time claimed. Moreover, the hours spent on these entries are reasonable amounts of time to spend on the identified tasks.

Importantly, Blaskiewicz does not propose a percentage reduction to account for the block billing. Instead, he asks the Court to reject the challenged entries in their entirety (Dkt. 26 at 7), which appear to comprise approximately 80 to 90 percent of the hours for which West Valley seeks to recover (Dkt. 26-1 at 4–6). Courts addressing block-billing challenges have generally imposed a percentage reduction to account for the difficulty in determining the time spent on particular tasks, rather than rejecting the challenged entries in their entirety. *See, e.g.*, *Norton v. Maximus Inc.*, No. 14-cv-00030, 2016 WL 6247004, at *4 (D. Idaho May 19, 2016) (applying 20 percent reduction to plaintiffs' 106 block-billed entries); *ThermoLife Int'l L.L.C. v. BPI Sports L.L.C.*, No. CV-20-02091, 2023 WL 3568199, at *17 (D. Ariz. May 19, 2023) (imposing 20 percent reduction on block-billed entries greater than three hours), *aff'd in part, remanded in part*, No. 23-15903, 2026 WL 2409839 (9th Cir. Aug. 18, 2026); *Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1223 (9th Cir. 2010) (ruling district court did not abuse its discretion by reducing 80 percent of attorney's billable hours by 30 percent for block billing). Blaskiewicz has not identified authority supporting the wholesale rejection of otherwise compensable time merely because the time was recorded in block-billed entries. The Court therefore declines to reduce the lodestar based on block billing.

Blaskiewicz next argues that the lodestar should be reduced because West Valley overstaffed the matter by having Mr. Howell, a partner, perform work that could have been performed by an associate (Dkt. 26 at 9). He notes that Mr. Howell billed 60.7 of the 76.9 hours claimed and contends that much of the legal research could have been performed by an associate

at a lower hourly rate (*id.*). West Valley responds that Mr. Howell was the primary attorney on the matter and that his experience and familiarity with the case permitted him to perform the work efficiently, thereby reducing the overall hours billed (Dkt. 29 at 10).

Certainly, overstaffing can be a basis for reducing the award of attorney fees. *See Hensley*, 461 U.S. at 434 (noting that "[c]ases may be overstaffed" and that counsel must "make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary"); *Carpenters Pension Tr. Fund for N. Cal. v. Walker*, No. 12-cv-01447, 2015 WL 1050479, at *2 (N.D. Cal. Mar. 9, 2015) (reducing attorney fees by 10 percent to account for overstaffing). The distribution of hours here, however, does not appear to warrant a general reduction for overstaffing. Mr. Howell attests that he has been involved in this action since early 2020 and has handled nearly all aspects of the litigation (Dkt. 29-1 ¶ 16). Mr. Howell further explains that his firm consists of ten attorneys and that an associate was not available based on the busy caseload (*id.*). He also points out that Mr. Zimmerman is a partner, but that he billed at a lower rate due to West Valley's policies (*id.*). Furthermore, the fact that an attorney with greater experience performed work that could have been delegated to a less senior attorney does not, standing alone, establish that the resulting fees are unreasonable. The Court also has no basis to conclude that Mr. Howell's work was performed inefficiently or that West Valley would have incurred fewer fees had the work been delegated to an associate. Indeed, the lodestar already accounts for the hours Mr. Howell reasonably expended at his stated hourly rate. Accordingly, the Court finds no basis to reduce the lodestar based on the staffing of the matter.

Blaskiewicz also argues that the case did not involve novel or difficult questions, that no particular time limitations were imposed, and that the amount involved was not significant (Dkt. 26 at 8–9). These circumstances do not warrant an adjustment. The absence of novel or difficult issues does not, by itself, justify reducing a lodestar based on hours and rates the Court has otherwise

found reasonable. Nor does the absence of unusual time limitations or a specific amount sought in this action provide a basis for reducing the award. Blaskiewicz further argues that West Valley's attorneys' use of hourly billing warrants greater scrutiny and that West Valley's assertion that the matter precluded other work is conclusory and unsupported (*id.* at 9). The Court has independently reviewed the billing records and finds no additional basis for adjusting the lodestar. The Court therefore declines to adjust the lodestar.

Accordingly, the Court grants the motion and awards West Valley $23,449.50 in attorney fees.

## IV. ORDER

**IT IS ORDERED that**:

1. Respondent West Valley's Motion for Attorney Fees (Dkt. 23) is **GRANTED**. The Court awards West Valley $23,449.50 in attorney fees.

DATED: September 24, 2026

Amanda K. Brailsford
U.S. District Court Judge